# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAIYU MO, an individual,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>FERETI SEMAIA, Warden of Adelanto ICE Processing Center, ERNESTO SANTACRUZ, Director of Los Angeles ICE Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, PAMELA BONDI, Attorney General of the United States, KRISTI NOEM, Secretary of Homeland Security, in their official capacities,<br><br>　　　　Respondents. | Case No. 5:26-cv-00700-JWH-PVC<br><br>**ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF No. 3]** |

Before the Court is the *ex parte* Application of Petitioner Haiyu Mo for a Temporary Restraining Order ("TRO") to enjoin Respondents Ernesto Santacruz, Todd Lyons, Pamela Bondi, Kristi Noem, and Fereti Semaia, the Warden of Adelanto ICE Processing Center from continuing to detain her in violation of her Due Process rights.[1]  The Court concludes that this matter is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in response,[2] the Court **GRANTS** Mo's Application, for the reasons set forth below.

## I. BACKGROUND

### A.  Factual Allegations

Mo, a native and citizen of the People's Republic of China, entered the United States without inspection in or about October 2024.[3]  Mo was detained by Immigration and Customs Enforcement ("ICE") for two months and placed into removal proceedings.[4]  ICE then released Mo on her own recognizance with the requirement that she appear periodically for check-ins at an ICE field office.[5]  Since her release, Mo regularly reported to ICE as required and resided continuously in the United States.[6]  At a routine check-in on November 24,

---

[1]   Pl.-Pet.'s *Ex Parte* Appl. for TRO (the "Application") [ECF No. 3]

[2]   The Court considered the documents of record in this action, including the following papers:  (1) Application; (2) Resps.-Defs.' Response to the Application (the "Response") [ECF No. 7]; (3) Pl.-Pet.'s Reply to the Application (the "Reply") [ECF No. 8]; and (4) Pl.-Pet.'s Pet. (the "Petition") [ECF No. 1].

[3]   Petition ¶¶ 1 & 16.

[4]   *Id.* at ¶ 17.

[5]   *Id.*

[6]   *Id.* at ¶ 18.

2025, Respondents arrested and detained Mo.[7] Mo is currently detained at Adelanto ICE Processing Center, and she has not been provided with a bond hearing.[8]

**B.  Procedural History**

On February 13, 2026, Mo filed both the instant Petition and the instant Application for a TRO.  In her Application, Mo seeks the following relief:

- ordering Mo's immediate release from Respondents' custody or, in the alternative, ordering Respondents to provide Mo with a bond hearing before an Immigration Judge within seven days;
- enjoining Respondents from transferring, re-arresting, or re-detaining Mo absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at which the Government establishes by clear and convincing evidence that detention is appropriate to prevent her flight or to protect the public; and
- requiring Respondents, if they choose to conduct such a hearing, to provide Mo with reasonable advance notice of time and place of the hearing.[9]

## II.  LEGAL STANDARD

A TRO preserves the *status quo* and prevents irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  *See Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  "A preliminary injunction is an extraordinary and

---

[7]     *Id.* at ¶ 19.
[8]     *Id.* at ¶ 1 & 20.
[9]     Application 1:20-2:1.

drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2).

A party seeking a TRO or a preliminary injunction must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir.), *as amended* (Mar. 11, 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). When the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

If the court issues a TRO, it must also issue an order to show cause why a preliminary injunction should not issue. *See* L.R. 65-1.

### III.  ANALYSIS

Mo argues that Respondents violated her procedural Due Process rights by detaining her without providing any pre-detention process including a bond hearing as required by 8 U.S.C. § 1226(a). The Court concludes that Mo satisfies the *Winter* factors with respect to her Due Process argument and, therefore, that the issuance of a TRO is appropriate.[10]

**A.    Likelihood of Success on the Merits**

Due process rights extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their

---

[10]    *See generally id.*

-4-

presence here is lawful, unlawful, temporary, or permanent." (citation modified)). Mo fits that description.

Thus, the outstanding question is "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The constitution typically requires some kind of a hearing before the State deprives a person of liberty or property, particularly because the loss of liberty cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (citation and quotation omitted). When determining what procedures are required by Due Process, a district court applies the three-part *Mathews* test, which involves an analysis of the following: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures; and "the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### 1. Private Interest at Stake

When determining the private interest at stake, the court looks to the degree of potential deprivation. *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015). Here, the degree of potential deprivation is high because Mo has been completely deprived of physical liberty. Because the degree of potential deprivation is high, this factor favors Mo.

### 2. Risk of Erroneous Deprivation

"[T]he risk of an erroneous deprivation [of liberty] is high" when the petitioner "has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). "Due Process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)

(citing *Zadvydas*, 533 U.S. at 690–94)).  Here, Respondents took Mo into immigration custody without notice or warning after she arrived for her check-in.  Compounding that lack of process, Respondents have continued to deny Mo a post-detention opportunity to contest her detention before a neutral decisionmaker.  Without an initial justification for re-detention or a bond hearing on the merits, the risk of erroneous deprivation is high.  Therefore, this factor favors Mo.

### 3. The Government's Interest

To determine the Government's interest, the Court must look at the function involved and the fiscal and administrative burdens imposed by the additional procedures.  Here, the Court finds that the Government's interest in detaining Mo without providing her with notice and a hearing is minimal because the effort and cost required to provide Mo with those procedural safeguards is minimal.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Because the Government's burden is low, this factor favors Mo.

The Court, having found that all of the *Mathews* factors favor Mo, concludes that procedural Due Process requires a pre-deprivation notice of the reasons for re-detention and a post-deprivation hearing on the merits before an Immigration Judge.

The Court also notes that, as it and myriad other courts have held in this district, petitioners such as Mo, who are detained in the United States, are detained pursuant to 8 U.S.C. § 1226, and, thus, they have a statutory right to a bond hearing at the outset of their detention.  *See, e.g.*, *Pelaez Calderon v. Noem*, Case No. 5:25-cv-02633-JWH-AS (C.D. Cal. Oct. 24, 2025); *Arreola Armenta v. Noem*, Case No. 5:25-cv-02416-JFW-SP (C.D. Cal. Sept. 16, 2025); *Mosqueda v. Noem*, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Benitez v. Noem*, Case No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Ceja Gonzalez v. Noem*,

Case No. 5:25-cv-2054-ODW-BFM (C.D. Cal. Aug. 13, 2025); and *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025). Therefore, because Mo's instant detention is governed by 8 U.S.C. § 1226, she was entitled to—but did not receive—an individualized bond hearing at the outset of her re-detention. That deprivation of an individualized bond hearing is an independent violation of Mo's statutory rights. Furthermore, in the event that Respondents elect to re-detain Mo with the required pre-deprivation due process, the bond hearing requirement set forth in 8 U.S.C. § 1226(a) applies, and Respondents must provide Mo with a bond hearing at the outset of that detention.

Accordingly, because Respondents denied Mo constitutionally and statutorily required pre- and post-deprivation due process, the Court concludes that Mo is likely to succeed on the merits of her procedural Due Process claims.

**B.   Irreparable Harm**

Mo has been detained without the procedures or notice required by the Due Process Clause of the Constitution and the bond hearing required by 8 U.S.C. § 1226(a). Thus, she has been deprived of process in a manner that likely violates her constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court finds that Mo would be immediately and irreparably harmed by the continued deprivation of her liberty without constitutionally mandated due process. *See Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (finding that irreparable harm was likely to result from the Government's policy of not considering financial ability to pay immigration bonds); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013) (finding that irreparable harm was likely to result from the

Government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).

### C. Balance of Equities and Public Interest

Because Mo challenges actions and a policy that are likely in violation of her constitutional rights, both the equities and the public interest favor the issuance of a temporary restraining order. *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue."). Furthermore, "[g]enerally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Zhang v. Barr*, 612 F. Supp. 3d 1005, 1017 (C.D. Cal. 2020). Accordingly, the Court concludes that both factors weigh in favor of Mo.

Thus, because the *Winter* factors all weigh in Mo's favor, the Court **GRANTS** Mo's Application.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Mo's instant Application for a TRO [ECF No. 3] is **GRANTED**.

2. Respondents are **TEMPORARILY ENJOINED** from continuing to detain Mo. Respondents are **DIRECTED** to release Mo **FORTHWITH** under the terms and conditions of her existing release, as if Mo had not been detained. This Order does not provide Mo with blanket immunity from future detention—that relief is likely beyond the Court's jurisdiction—but any future enforcement actions after release must comply with Due Process requirements.

3. Respondents are **TEMPORARILY ENJOINED** from removing Mo or transferring her outside the Central District of California.

4. Respondents are **ORDERED** to **SHOW CAUSE** in writing no later than March 3, 2026, why the Court should not issue a preliminary injunction in this case.

5. Mo is **GRANTED** leave to file an optional reply no later than 9:00 a.m. on March 5, 2026.

6. A hearing on the OSC re preliminary injunction is **SET** for March 6, 2026, at 8:30 a.m. Counsel for the parties are **DIRECTED** to appear in person at that date and time in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

7. This Temporary Restraining Order shall remain in effect until the conclusion of the hearing on March 6, 2026.

**IT IS SO ORDERED.**

Dated: February 25, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE